## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 12 2018, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Eric Dontre Freeman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 12, 2018

Court of Appeals Case No.
49A04-1710-CR-2217

Appeal from the Marion Superior Court

The Honorable Lisa F. Borges, Judge

The Honorable Anne Flannelly, Magistrate

Trial Court Cause No.
49G04-1604-F5-15733

**Altice, Judge.**

## Case Summary

[1] Eric Freeman appeals his convictions for Level 5 felony carrying a handgun without a license and Class A misdemeanor unlawful possession of a firearm by a domestic batterer. On appeal, he argues that the trial court abused its discretion in admitting evidence obtained as a result of an unlawful search and seizure.

[2] We affirm.

## Facts & Procedural History

[3] On the evening of April 24, 2016, Officer Clayton Portell of the Indianapolis Metropolitan Police Department responded to a 911 call reporting a fight in progress, with shots fired by both a man and a woman. Officer Portell arrived on the scene within three minutes of the 911 call and observed four people—two men and two women—engaged in a very heated argument. The scene was chaotic, with neighbors yelling from their yards and porches.

[4] One of the men involved in the altercation was later identified as Freeman. When Freeman saw Officer Portell get out of his police cruiser, Freeman abruptly stopped arguing, "got real wide-eyed" and started walking toward a house. *Transcript Vol. 2* at 11. Officer Portell ordered Freeman to stop and then patted him down. During the pat-down, Officer Clayton felt what he immediately recognized to be a handgun in Freeman's pocket. Officer Clayton put Freeman's hands behind his back, retrieved the firearm, and sought

assistance from another officer. After Freeman was in handcuffs and the handgun was secured, Officer Portell ran Freeman's information and discovered that he was precluded from possessing a firearm in Indiana.

As a result of these events, the State charged Freeman with Level 5 felony carrying a handgun without a license and Class A misdemeanor possession of a firearm by a domestic batterer. The case proceeded to a bench trial on July 21, 2017, at the conclusion of which Freeman was found guilty as charged. On September 5, 2017, the trial court sentenced Freeman to three years, with one year executed on community corrections and two years suspended to probation. Freeman now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

On appeal, Freeman argues that the trial court abused its discretion in admitting evidence obtained as a result of an unlawful search and seizure. Trial courts have broad discretion in ruling on the admissibility of evidence, and such rulings will be reversed only upon a showing of an abuse of that discretion. *Palilonis v. State*, 970 N.E.2d 713, 725 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic and effect of the facts and circumstances before it. *Id*. In reviewing a trial court's evidentiary rulings, we will not reweigh the evidence, and we will consider conflicting evidence most favorable to the trial court's ruling. *Id.* We also consider uncontroverted evidence in the defendant's favor. *Joseph v. State*, 975 N.E.2d 420, 424 (Ind. Ct. App. 2012).

[7]     As this court has explained:

> The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures by the government. *Malone v. State*, 882 N.E.2d 784, 786 (Ind. Ct. App. 2008). "Searches performed by government officials without warrants are per se unreasonable under the Fourth Amendment, subject to a 'few specifically established and well-delineated exceptions.'" *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967)). When a search is conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search. *Id.*; *Malone*, 882 N.E.2d at 786.
>
> One such exception was established in *Terry v. Ohio*, in which the United States Supreme Court held that a police officer may briefly detain a person for investigatory purposes if, based on specific and articulable facts together with reasonable inferences drawn therefrom, an ordinarily prudent person would reasonably suspect that criminal activity was afoot. 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Howard v. State*, 862 N.E.2d 1208, 1210 (Ind. Ct. App. 2007). Reasonable suspicion is determined on a case-by-case basis by examining the totality of the circumstances. *Id.* In addition to detainment, *Terry* permits a police officer to conduct a limited search of the individual's outer clothing for weapons if the officer reasonably believes that the individual is armed and dangerous. *Id.* An officer's authority to perform such a pat-down search of a detained individual during a *Terry* stop is dependent upon the nature and extent of the officer's particularized concern for his or her safety. *Rybolt v. State*, 770 N.E.2d 935, 938 (Ind. Ct. App. 2002), *trans. denied*.

*Patterson v. State*, 958 N.E.2d 478, 482-83 (Ind. Ct. App. 2011).

[8] Freeman argues that Officer Portell lacked reasonable suspicion to detain him as he walked away from the scene of the altercation or to conduct the pat-down search that led to the discovery of the handgun. We disagree.

[9] The evidence presented establishes that Officer Portell responded to a 911 call reporting a fight in progress. The fight was taking place in a high-crime area, and the caller indicated that one shot had been fired by a woman and a second shot had been fired by a man. Upon arriving at the scene within three minutes of the 911 call, Officer Portell encountered a situation consistent with the 911 caller's account. Specifically, two men and two women were engaged in a heated argument and "they were very animated arguing up [in] each other's faces." *Transcript Vol. 2* at 9. Upon spotting Officer Portell, Freeman abruptly broke off from the argument, "got real wide-eyed," and started walking back toward a house. *Id.* at 11. When Officer Portell ordered Freeman to stop, he did not immediately comply. These facts provide ample support for the trial court's finding that Officer Portell had reasonable suspicion both to detain Freeman and to pat him down for weapons, which led to the discovery of the handgun. *See Lampkins v. State*, 682 N.E.2d 1268, 1271 (Ind. 1997) (explaining that "as a general rule, an anonymous tip alone is not likely to constitute the reasonable suspicion necessary for a valid *Terry* stop" but "where significant aspects of the tip are corroborated by the police, a *Terry* stop is likely valid"); *Patterson*, 958 N.E.2d at 486 (finding presence in a high-crime area to be a relevant factor in determining whether officer had a reasonable belief that the defendant was armed so as to justify a pat-down search); *Howard v. State*, 862

N.E.2d 1208, 1210-11 (Ind. Ct. App. 2007) (noting that "nervous and evasive behavior is a pertinent factor in determining whether reasonable suspicion exists"). Freeman has not established that the stop and pat-down search violated his Fourth Amendment rights.

[10] Freeman also argues that the stop and pat-down search violated his rights under Article 1, Section 11 of the Indiana Constitution. Article 1, Section 11, like the Fourth Amendment, bars unreasonable searches and seizures. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). "Although Indiana's Section 11 and the Federal Fourth Amendment are textually identical, they are analytically distinct." *Id.* Specifically, while Fourth Amendment analysis turns on whether the subject of a search had a reasonable expectation of privacy, analysis under Article 1, Section 11 turns on whether the police conduct was reasonable under the totality of the circumstances. *Id.* at 1001-02. In evaluating the reasonableness of police conduct, we consider: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* at 1002 (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)). The State bears the burden at trial of establishing that the police conduct was reasonable. *Id.*

[11] In this case, the degree of suspicion or concern that a violation had occurred weighs in the State's favor. Officer Portell arrived within three minutes of the 911 call, and he came upon a scene consistent with what the 911 caller had described. Moreover, a very heated argument between two men and two

women was ongoing, and Freeman abruptly stopped arguing and walked away when he saw Officer Portell. Further, the degree of intrusion in this case was relatively minimal. *See Edmond v. State*, 951 N.E.2d 585, 592 (Ind. Ct. App. 2011) (finding a pat-down search of a defendant's clothing was a minimal intrusion in the context of a search incident to arrest). Finally, law enforcement needs were great. Officer Portell had been informed that one of the men at the scene had fired a gun, and it was therefore critical for police to determine whether Freeman was armed in order to ensure their own safety and the safety of the many bystanders. Freeman has not established that the pat-down search was unreasonable under Article 1, Section 11 of the Indiana Constitution.

[12] Judgment affirmed.

[13] May, J. and Vaidik, C.J., concur.