**Michael S. EDWARDS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 09S02–0112–CR–649.

Supreme Court of Indiana.

Dec. 18, 2001.

Jay T. Hirschauer, Cass County Public Defender, Logansport, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

We hold that routine, warrantless strip searches of misdemeanor arrestees, even

when incident to lawful arrests, are impermissible under the Indiana Constitution and the United States Constitution, and that before jail officials may conduct warrantless strip searches of misdemeanor arrestees detained awaiting the posting of bond, those officials must have a reasonable suspicion that the arrestee is concealing weapons or contraband.

### Factual and Procedural Background

On January 29, 2000, Logansport police officers Fred Rogers and Robert Smith stopped a maroon station wagon that was being driven approximately ten miles per hour over the speed limit on a snow-covered road. Smith approached the driver, Lawrence Walker, and Rogers approached the passenger, Michael Edwards. Smith asked Walker for identification, and Walker produced a learner's permit with his own picture but bearing the name Michael Edwards. Edwards in the meantime told Rogers that his name was Michael Edwards and offered a pay stub with that name.

When the officers returned to their squad car to issue a speeding citation, they realized that both men had given them the same name and the same date of birth. The officers confronted the two men, patted them down, and handcuffed them. Edwards apologized for lying, explained that the pay stub belonged to the driver, and identified himself first as Nigel Smith, then as Michael Smith. He also gave the officers a second date of birth, and told them again that the driver's name was Michael Edwards.

Because neither man had a valid driver's license, and because the officers could not verify the identity of either, the officers decided to transport both to the Logansport police station. A search of the station wagon, which was to be impounded, revealed no weapons or contraband. Walker was subsequently arrested for forgery based on presenting the false learner's permit. He was taken to the Cass County jail, and when he removed his left boot in the book-in procedure, a small plastic bag containing .14 grams of crack cocaine was discovered. A search of the squad car used to transport Walker to the jail revealed twenty-four individually wrapped pieces of rock cocaine totaling 3.10 grams.

While Walker was being transported to the jail, Rogers and Detective Michael Clark continued to interview Edwards at the police station. At some point during that interview, Rogers placed Edwards under arrest, but the record is silent as to the reason for the arrest. Edwards then offered to take the officers to his house to get his birth certificate and prove his identity. Clark agreed, as long as Edwards would allow officers to search his home. Edwards relented, and three officers and a police canine conducted the search. The birth certificate was recovered, but no other contraband was found. Edwards, still under arrest, was then transported to the Cass County jail.

Jail correctional officer Jerry Denny, who had been present when the cocaine was discovered in Walker's boot, conducted a strip search of Edwards. A plastic bag containing seven rocks of crack cocaine weighing 1.12 grams was discovered between Edwards' buttocks, and Edwards was charged with possession of cocaine as a Class A felony. Edwards filed a motion to suppress the cocaine, arguing that the police had neither probable cause to arrest him nor a valid search warrant, so the jailhouse strip search was unconstitutional. The trial court denied the motion after a hearing. Edwards then moved to set aside the order denying his motion, and also filed a motion to dismiss the charges because of insufficient evidence. The trial court denied both motions and, at Edwards' request, certified an interlocutory

appeal. The Court of Appeals affirmed the trial court and this Court granted transfer.

### Motion to Suppress

■ Both the trial court and the Court of Appeals characterized the strip search of Edwards as a search incident to a lawful arrest. We agree that the police had probable cause to arrest Edwards and did so lawfully.[1] We also agree that a police officer may conduct a warrantless search of a person if the search is incident to a lawful arrest. *See Townsend v. State,* 460 N.E.2d 139, 141 (Ind.1984). In such situations, the search and the arrest must be "substantially contemporaneous," and the search must be confined to the immediate vicinity of the arrest. *Id.* The requirement of a contemporaneous search has been interpreted liberally, however, and this Court has validated searches that do not occur until the arrestee arrives at a law enforcement facility, as long as the items searched are "found on the person of an arrestee" or are "immediately associated with his person." *Chambers v. State,* 422 N.E.2d 1198, 1203 (Ind.1981). Thus, the trial court and the Court of Appeals correctly concluded that the strip search of Edwards could be evaluated as one incident to a lawful arrest.

■ Both our cases and those of the federal courts place limits on searches incident to an arrest. The United States Supreme Court has held that once a lawful arrest has been made, authorities may conduct a "full search" of the arrestee for weapons or concealed evidence. *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). No additional probable cause for the search is required, and the search incident to arrest may " 'involve a relatively extensive exploration of the person.' " *Id.* at 227, 94 S.Ct. 467 (quoting *Terry v. Ohio,* 392 U.S. 1, 25, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Nonetheless, such a search would be unreasonable, and therefore a violation of the Fourth Amendment standard, if it were "extreme or patently abusive." *Id.* at 236, 94 S.Ct. 467. In this case, Edwards was strip-searched when he was processed into the Cass County jail several hours after his arrest. At that point Edwards had not been charged with any criminal activity, and the possible charges he faced were all for nonviolent misdemeanor offenses. We do not believe that routine, warrantless strip searches of misdemeanor arrestees, even when incident to lawful arrests, are reasonable as both Article I, Section 11 of our state constitution and the Fourth Amendment to the federal constitution require. There may be misdemeanor charges for which a body search is appropriate because of the reasonable likelihood of discovery of evidence, but false informing, without more, is certainly not such a crime. Nor, as explained below, does the possible discovery of weapons or contraband justify a search of every incarcerated person. For these reasons, we grant transfer to make clear we do not agree with the Court of Appeals to the extent it implied that as a general proposition a routine, warrantless strip search incident to a lawful misdemeanor arrest is reasonable.

■ We are unable to determine on this record whether the search was justified by a concern that weapons or contraband might be introduced into the jail. In *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1273 (7th Cir.1983), the Seventh Cir-

---

1. As explained above, the record is silent as to the reason for Edwards' arrest. Possible charges against Edwards include false informing and/or permitting the unlawful use of his identification card by Walker, both of which are misdemeanor offenses. *See* Ind. Code §§ 35–44–2–2(c) and 9–24–16–12 (1998).

cuit Court of Appeals held that before jail officials may conduct warrantless strip searches of misdemeanor arrestees detained awaiting the posting of bond, those officials must have a reasonable suspicion that the arrestees are concealing weapons or contraband. That decision ruled on a point of federal constitutional law and found the search to violate the Fourth Amendment's ban on unreasonable searches and seizures. We assume *Mary Beth G.* was correctly decided under the Fourth Amendment, but reach the same conclusion under Article I, Section 11 of the Indiana Constitution. To the extent a search is conducted on the basis of jail security, the indignity and personal invasion necessarily accompanying a strip search is simply not reasonable without the reasonable suspicion that weapons or contraband may be introduced into the jail. The dissenting opinion from the Court of Appeals would require that the reasonable suspicion be connected to the offense for which the individual was arrested. *Edwards v. State,* 750 N.E.2d 377, 383 (Ind. Ct.App.2001). We do not believe the suspicion need be based on that offense. Some offenses inherently give rise to a reasonable suspicion that a suspect possesses weapons or contraband. But irrespective of the offense, the circumstances surrounding the arrest, rather than the offense itself, may give rise to a reasonable suspicion, and if so the search is justified.

■ The strip search of Edwards was appropriate if the correctional officer who conducted it had a reasonable suspicion, based upon the totality of the circumstances surrounding Edwards' arrest, that Edwards was concealing weapons or contraband. If a warrantless search or seizure is conducted, however, the State bears the burden of proving that the search or seizure falls within one of the well-delineated exceptions to the rule mak-

ing such searches per se unreasonable under the Fourth Amendment. *Middleton v. State,* 714 N.E.2d 1099, 1101 (Ind.1999). The same applies under Article I, Section 11 of the Indiana Constitution. *State v. Friedel,* 714 N.E.2d 1231, 1243 (Ind.Ct. App.1999). Our review of the denial of a motion to suppress is similar to other sufficiency matters. *Goodner v. State,* 714 N.E.2d 638, 641 (Ind.1999). The record must disclose substantial evidence of probative value that supports the trial court's decision. *Id.* We do not reweigh the evidence and we consider conflicting evidence most favorably to the trial court's ruling. *Id.*

■ Here, it is clear that Denny was present when contraband was discovered on Edwards' cohort, Walker. However, the scant record before this Court includes no testimony from Denny or other jail personnel, and it is not clear whether Denny entertained a reasonable suspicion that a strip search of Edwards would reveal more contraband, or whether he was merely following a routine that dictated an improper, warrantless strip search of every misdemeanor arrestee. Because the State did not carry its burden of proving that the warrantless strip search of Edwards fell within an exception to the warrant requirement, Edwards' motion to suppress should have been granted.

### Conclusion

We summarily affirm the other findings of the Court of Appeals and remand this action to the trial court for proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.